IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JOHNNY N. IVY,

      Plaintiff,

v.

      Civil Action No.: _____
      (JURY TRIAL DEMANDED)

O'REILLY AUTOMOTIVE STORES, INC.,
d/b/a O'REILLY AUTO PARTS,

      Defendant.

## COMPLAINT

COMES NOW, the Plaintiff, Johnny N. Ivy ("Plaintiff" or "Mr. Ivy") by and through his undersigned counsel and files the instant Complaint against O'Reilly Automotive Stores, Inc., d/b/a O'Reilly Auto Parts ("Defendant") or ("O'Reilly") stating unto the Court as follows:

## **PARTIES**

1. Plaintiff Johnny N. Ivy is a citizen and resident of the State of Tennessee with his residence located at 8360 Dogwood Road, Germantown, Tennessee 38139.

2. Defendant O'Reilly Automotive Stores, Inc., d/b/a O'Reilly Auto Parts is a Missouri Corporation. O'Reilly maintains an office and conducts business in the State of Tennessee at 3320 Summer Avenue, Memphis, Tennessee 38122. O'Reilly maintains its principal place of business at 233 South Patterson Avenue, Springfield, Missouri 65802. O'Reilly's registered agent for service of process is CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929.

3.      Defendant is engaged in the business of supplying automobile parts to retail customers and professional installers.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332 as this case involves a federal question under the Age Discrimination in Employment Act ("ADEA") and based upon diversity of citizenship as Plaintiff and Defendant are citizens and residents of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs.  Plaintiff Ivy also brings claims under the Tennessee Human Rights Act ("THRA"), and this Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

5.      Defendant is subject to personal jurisdiction in the State of Tennessee as Defendant does business in and has minimum contact and continuous, substantial and systemic contact with the State of Tennessee.

6.      Venue is proper pursuant to 28 U.S.C. § 1391, as this cause of action arose in, the employment relationship was supervised from offices located in, and the Defendant resides in and maintains offices and other places of business in Memphis, Shelby County, Tennessee.

## FACTS

7.      My Ivy is 72 years old.  He began working for O'Reilly on October 24, 2005. Mr. Ivy has extensive experience in the automotive repair industry that predates the tenure of his employment with O'Reilly.  Immediately preceding his employment with O'Reilly, Mr. Ivy owned a Goodyear Auto Service dealership in Jackson, Tennessee for approximately eight (8) years.  After closing his business, Mr. Ivy began working for O'Reilly on October 24, 2005 as a Territory Sales Manager ("TSM").  Approximately one (1) year later, he was promoted to

Regional Field Sales Manager ("RFSM"), a position he held at O'Reilly until he was unlawfully terminated in January 2016 because of his age.

8.    Throughout his employment, Mr. Ivy received favorable performance evaluations as well as a promotion from TSM to RFSM.  Mr. Ivy also routinely received performance-based bonuses, and received recognition for his outstanding performance throughout his employment with O'Reilly.  Mr. Ivy's 2015 Mid-Year performance review demonstrates that Mr. Ivy was performing satisfactorily in all aspects of his job. (See, Mr. Ivy's 2015 RFSM Mid-Year Check Up, attached hereto as Exhibit A).

9.    To commemorate Mr. Ivy's 10th anniversary with O'Reilly in October 2015, Mr. Barry Plunkett ("Mr. Plunkett"), O'Reilly's Director of Eastern Division Sales and Mr. Ivy's immediate supervisor, sent Mr. Ivy a letter commending his performance as RFSM:

> I would like to personally thank you for all of the help and support that you have given me over the past year and a half.  When I came to Memphis I had no idea about the market, and quite frankly, would have had a lot harder time getting a hold on all of our challenges if it had not been for your help.  Thank you for keeping a positive attitude through all of our transition in Memphis.  I can honestly say that we as a team (both sales and ops) have taken a seriously broken market and turned it around with your help and leadership.  It's an honor to work with you.
>
> Congratulations on 10 years of service with our company.
>
> Sincerely
>
> Barry Plunkett
>
> Director of Eastern Division Sales

(See, October 2015 Correspondence from Mr. Plunkett to Mr. Ivy, attached hereto as Exhibit B).

10.    Throughout 2015, Mr. Ivy's supervisors at O'Reilly repeatedly asked him when he was going to retire and repeatedly pressured him to retire.  Mr. Ivy always responded that he

was not ready to retire and wanted to continue working as long as he was healthy and able to perform the duties of his job.

11.     Mr. Ivy also heard rumors from his TSM's in weekly Monday morning conference calls that Mr. Ivy would be retiring at the end of 2015.  Each time that a TSM mentioned this rumor, Mr. Ivy responded that he was not retiring and that he wanted to continue working for O'Reilly as long as he was healthy and able to perform the duties of his job.

12.     In March 2015, O'Reilly implemented a new policy regarding its employees' eligibility for retirement benefits. (See, March 27, 2015 correspondence from Kristyn Johnson to O'Reilly managers, attached hereto as Exhibit C).  The new retirement eligibility program was called "COMBO 80."  To qualify for retirement benefits, an O'Reilly employee must have a combination of age and years of full-time service that equal 80. (Id).  The O'Reilly employee must be at least fifty-five (55) years old and have a minimum of fifteen (15) years of full-time service with O'Reilly. (Id.).  Under the COMBO 80 program, Mr. Ivy would not be eligible to receive retirement benefits until October 2020, which would mark fifteen (15) years of Mr. Ivy's full-time service with O'Reilly.  Throughout 2015 when Mr. Ivy was repeatedly asked when he was going to retire and in January 2016 when he was unlawfully terminated by O'Reilly because of his age, Mr. Ivy was ineligible to receive retirement benefits under O'Reilly's retirement policy.

13.     On or about December 8, 2015, Mr. Ivy participated in a conference call with Mr. Plunkett and Ernie Golden Jr. ("Mr. Golden"), Director of the Nashville Region for O'Reilly. Mr. Plunkett and Mr. Golden informed Mr. Ivy that they wanted to remove him from his position as RFSM effective December 31, 2015 and replace him with Scott Hall ("Mr. Hall"), an RFSM in training who had received his training from Mr. Ivy.  Mr. Hall is forty-eight (48) years old,

which is twenty-four (24) years younger than Mr. Ivy.  When Mr. Ivy asked why they wanted to replace him with Mr. Hall, Mr. Golden responded that they "liked Mr. Hall's energy."

14.     Because Mr. Ivy had repeatedly announced in 2015 that he had no intention of retiring, he was surprised to learn that Mr. Plunkett and Mr. Golden intended to replace Mr. Ivy with his trainee Mr. Hall at the end of 2015.  Later in the day on December 8, 2015, Mr. Ivy reiterated his intention to continue working as RFSM in an email addressed to Mr. Plunkett and on which Mr. Golden, Mr. Hall, and Billy Harris ("Mr. Harris"), O'Reilly's Eastern Division Vice President, were copied.  (See, December 8, 2015 correspondence from Mr. Ivy to Mr. Plunkett, Mr. Golden, Mr. Hall and Mr. Harris, attached hereto as Exhibit D).  Mr. Ivy's email clearly explained:

> I am working for a great company with great leadership.  Since there seems to be some misunderstanding on when I will be retiring, I want to go [on] record that I do not intend to retire year end.  I would prefer to stay with the company at the same location and position for two more years.  I will continue to perform at the same level or better moving forward.  This was announced earlier this year.  Hope everyone understands and agrees to this.  Thank for all the support each of you have given me.

(Id.).

15.     Following the December 8, 2015 conference call and email, Mr. Ivy met with Mr. Plunkett, Mr. Harris and Mr. Golden on December 11, 2015 in Nashville, Tennessee.  Mr. Ivy once again announced that he had no intention to retire at the end of 2015.  Rather, Mr. Ivy explained that he would like to work as an RFSM for two (2) more years until his wife was able to qualify for Medicare.  Mr. Plunkett, Mr. Harris and Mr. Golden all agreed that Mr. Ivy would remain in his RFSM position until the end of 2017, and Mr. Harris, who was O'Reilly's Eastern Division Vice President, announced that he would reduce the understanding to writing.  Shortly

thereafter, Mr. Harris suffered a heart attack, and accordingly the agreement was never reduced to writing.

16.    In late December 2015, Mr. Ivy met with Mr. Hall for lunch.  Mr. Hall informed Mr. Ivy that O'Reilly management had promised him an RFSM job at the end of 2015, and Mr. Hall intended to "hold them to it."

17.    Mr. Ivy did not retire at the end of 2015, and Mr. Hall did not replace Mr. Ivy as RFSM at the end of 2015.  Rather, Mr. Ivy continued to work in his job as RFSM throughout the first three (3) weeks of January 2016.

18.    On or about Friday, January 22, 2016, Mr. Plunkett and Mr. Golden informed Mr. Ivy that they wanted to meet with him in Memphis, Tennessee to discuss plans for 2016.  Just minutes before the meeting, Mr. Ivy received a text message stating that Brad Beckham ("Mr. Beckham"), O'Reilly's Senior Vice President of Eastern Operations and Sales, would be attending the meeting.  Upon information and belief, Mr. Beckham is in his 30s, and as such is significantly younger than Mr. Ivy.

19.    The Friday, January 22, 2016 meeting occurred at a Burger King in Memphis, Tennessee.  Mr. Beckham began the meeting by promptly announcing that Mr. Ivy was terminated from his job as RFSM, and that Mr. Hall, a significantly younger worker, would be replacing him on January 31, 2016.  Mr. Beckham stated that the December 11, 2015 meeting in Nashville, Tennessee where Mr. Plunkett, Mr. Harris and Mr. Golden agreed that Mr. Ivy would remain in his job as RFSM until the end of 2017 should have never occurred, and that Mr. Beckham was overriding the agreement reached between Mr. Ivy and members of the O'Reilly management team on December 11, 2015.

20.    Mr. Ivy asked Mr. Beckham what he was supposed to do now, to which Mr. Beckham replied, "I don't know.  I have nothing for you."  Mr. Beckham stated that perhaps Mr. Plunkett or Mr. Golden could find a position for Mr. Ivy at O'Reilly, but any such position would be a demotion from his position as RFSM.

21.    Immediately thereafter, Mr. Beckham demanded to know whether Mr. Ivy would be retiring or whether he would be searching for another position at O'Reilly, which would be a demotion.  When Mr. Ivy did not give an immediate, definitive response to Mr. Beckham, Mr. Beckham gave Mr. Ivy an ultimatum with three (3) days to respond: by Monday, January 25, 2016, Mr. Ivy could either find and accept a demotion to a lower-paying and less prestigious position within O'Reilly, or he could retire and "go to his house."  In other words, Mr. Ivy could choose to retire now, or he could accept a demotion which would force him to work in intolerable working conditions created by O'Reilly with the intention of forcing Mr. Ivy to retire in the future.  O'Reilly acted unlawfully with the intention to force Mr. Ivy to retire due to his age.

22.    On Monday, January 25, 2016, Mr. Plunkett called Mr. Ivy to offer him a demotion to the position of TSM.  Mr. Plunkett told Mr. Ivy that this was one of the hardest things he had ever done but he had promised the RFSM job to Scott Hall.  As a TSM, Mr. Ivy would report directly to Mr. Hall, a significantly younger worker who Mr. Ivy had personally trained to be an RFSM.  Furthermore, the TSM job offered Mr. Ivy substantially less pay, a material loss of benefits, less job responsibilities, a less distinguished title, more menial work, and would place Mr. Ivy on straight commissions after one (1) year as opposed to the guaranteed salary he enjoyed as an RFSM.  The conditions of the TSM job offered to Mr. Ivy by O'Reilly were deliberately created by O'Reilly to force Mr. Ivy into objectively intolerable working

conditions with the intention of causing Mr. Ivy to quit.  As such, the offer of the TSM job to Mr. Ivy amounted to a constructive discharge of Mr. Ivy.

23.     Mr. Ivy declined to accept the demotion to the TSM job.  Having been terminated from his RFSM position on January 22, 2016, and having failed to accept the demotion to the TSM job on January 25, 2016, Mr. Ivy was effectively discharged from all employment with O'Reilly.

24.     On February 1, 2016, O'Reilly Professional Sales Support Manager Kevin Thuro ("Mr. Thuro") sent an email with the subject line "Regional Field Sales Manager Announcement – January 2016" to all of O'Reilly's corporate managers.  (See, February 1, 2016 email from Mr. Thuro, attached hereto as Exhibit E).  The email announced, "**Johnny Ivy**, Regional Field Sales Manager # 25 in the Eastern Division, has left the company to pursue other interests (effective 1/29).  Scott Hall, Regional Field Sales Manager in Training for the Eastern Division will act as interim until further notice." (Id.) (emphasis in original).  This email falsely represented that Mr. Ivy has voluntarily left the company to pursue other interests, when in fact he was terminated by Mr. Beckham on January 22, 2016.  O'Reilly made the false representation that Mr. Ivy had voluntarily left O'Reilly to pursue other interests in order to obfuscate the fact that Mr. Ivy was terminated because of his age, 72, in violation of the ADEA.

25.     On or about February 11, 2016, O'Reilly filed a Separation Notice with the Tennessee Department of Labor and Workforce Development ("TDOL"). (See, February 11, 2015 Separation Notice, attached hereto as Exhibit F).  Despite the fact that Mr. Beckham unequivocally announced on January 22, 2016 that Mr. Ivy was terminated from his position as RFSM, O'Reilly made the false representation in the Separation Notice that the reason for Mr. Ivy's separation was "voluntary." (Id.).  Yet again, O'Reilly made the false representation that

Mr. Ivy had voluntarily quit in order to cover up the fact that Mr. Ivy was terminated because of his age, 72, in violation of the ADEA.

26.     On or about February 15, 2016, Mr. Ivy received a retirement plaque from O'Reilly in the mail. (See, Picture of Retirement Plaque, attached hereto as Exhibit G). The text on the front of the plaque stated:

JOHNNY IVY

IN APPRECIATION OF YOUR YEARS OF SERVICE
BEST WISHES FOR A LONG & HAPPY RETIREMENT
FROM ALL YOUR FRIENDS AT

O'Reilly AUTO PARTS
RFSM

(Id.).   Mr. Ivy did not retire; he was terminated by Mr. Beckham on January 22, 2016. Furthermore, Mr. Ivy was not eligible for retirement at O'Reilly until 2020 under the company's retirement benefits program. (See, Ex. C).  Once again, O'Reilly made the false representation that Mr. Ivy had retired in order to obfuscate the fact that Mr. Ivy was terminated because of his age, 72, in violation of the ADEA.

27.     Because O'Reilly falsely represented in the February 1, 2016 email, in the Separation Notice, and on the retirement plaque that Mr. Ivy had voluntarily retired when in fact he had been terminated by Mr. Beckham, Mr. Ivy sent Mr. Plunkett a Separation Notice Correction Request on February 26, 2016, which stated:

Barry Plunkett,

I received the Separation Notice from O'Reilly and it is not correct.  It indicates that I voluntarily quit my job as Regional Field Sales Manager.  I did not quit my job. The truth is that I was terminated from my position by Brad Beckham.  On January 22, 2016, Brad Beckham told me that I was not going to be the Regional Sales Manager as of January 31, and that Scott Hall was going to take my job. You were present when Brad told me I was being removed from my Regional Field Sales Manager position.  The reason Brad Beckham gave me was that he

wanted Scott Hall in that job. Now, someone has switched the story saying I voluntarily quit. I never voluntarily quit, and you know that.

If anyone at O'Reilly thinks I quit, they are mistaken, and there is a big misunderstanding. If you think they are telling everyone I quit, that isn't true. But, if you believe I quit then I want to return to my job as Regional Field Sales Manager immediately and I am ready to return. Please let me know when I should return to my job as Regional Field Sales Manager. If you don't want me to return, you need to change the Separation Notice to show I was discharged and state the true reason I was terminated from employment so that I can try to collect unemployment benefits to support my family.

(See, February 26, 2016 Separation Notice Correction Request, attached hereto as Exhibit H).

28. Mr. Plunkett responded to Mr. Ivy's Separation Notice Correction Request on February 26, 2016, stating, "At this point all future communication on this matter needs to be with our Vice President of Human Resources, Jonathan Andrews." (See, February 26, 2016 Correspondence from Mr. Plunkett to Mr. ivy, attached hereto as Exhibit I).

29. Mr. Ivy filed a claim for unemployment benefits with the TDOL, and on March 11, 2016, the TDOL awarded unemployment benefits to Mr. Ivy, stating in its decision, "Claimant was **discharged** from most recent work." (See, March 11, 2016 TDOL Decision, attached hereto as Exhibit J) (emphasis supplied).

30. On March 14, 2016, Mr. Ivy received correspondence from O'Reilly along with a 2015 O'Reilly Management Incentive Plan bonus check for his outstanding performance in 2015. (See, March 14, 2016 Correspondence Regarding 2015 OMIP Bonus, attached hereto as Exhibit K). The correspondence stated, "This bonus is in recognition of your performance and contributions to the company's outstanding performance in 2015." (Id.). Mr. Ivy's bonus totaled 15% of his base salary. As Mr. Ivy's performance in 2015 was rewarded with a 15% performance bonus, it is clear that that Mr. Ivy was not terminated by Mr. Beckham on January

10

22, 2016 because of his performance.  Rather, Mr. Ivy was terminated because of his age, 72, in violation of the ADEA.

31.    Mr. Ivy did not retire and did not quit his job as an RFSM at O'Reilly.  He was terminated by Mr. Beckham because Mr. Beckham believed Mr. Ivy was too old to be working and should retire, and because he wanted to replace Mr. Ivy with a younger worker who had more "energy."  The RFSM position held by Mr. Ivy was in fact given to Mr. Hall, who is twenty-four (24) years younger than Mr. Ivy, and who was personally trained to be an RFSM by Mr. Ivy.

32.    On April 6, 2016, Mr. Ivy filed a Charge with the Equal Employment Opportunity Commission ("EEOC") regarding the matters complained of herein.  A copy of that Charge is attached hereto as Exhibit L.

33.    More than sixty (60) days have passed since the filing of Mr. Ivy's EEOC Charge.

## CAUSE OF ACTION

### COUNT I
### Age Discrimination in Violation of the ADEA

34.    Paragraphs 1 through 33 are incorporated herein by reference as though they were specifically set forth herein.

35.    Mr. Ivy is age 72 and is a member of a protected class under the ADEA. Defendant is an employer for purposes of the ADEA pursuant to 29 U.S.C. § 630(b).

36.    Defendant's actions constitute unlawful and intentional discrimination on the basis of age in violation of the ADEA.  Defendant O'Reilly is vicariously liable for all actions of its employees.

11

37.    Defendant subjected Mr. Ivy to an adverse employment action, his termination as an RFSM, because of his age.  While Mr. Ivy was later offered a demotion to a TSM position, this offer amounted to a constructive discharge of Mr. Ivy, as the conditions of the TSM job were deliberately created by O'Reilly to force Mr. Ivy into intolerable working conditions with the intention of causing Mr. Ivy to quit.  To the extent that Defendant maintains that Mr. Ivy voluntarily quit his job, which he did not, Mr. Ivy contends that he was constructively discharged.

38.    Mr. Ivy was qualified for the position of RFSM.  Throughout his employment, Mr. Ivy received favorable performance evaluations, and he regularly received performance-based bonuses, and received recognition for his excellent performance throughout his employment with O'Reilly.  Mr. Ivy's 2015 Mid-Year performance review demonstrates that Mr. Ivy was performing satisfactorily in all aspects of his job, and he received a 15% performance bonus for his work in 2015.  Mr. Ivy was qualified to work as an RFSM, and had satisfactorily performed his job as an RFSM for approximately ten (10) years at the time he was terminated because of his age.

39.    The RFSM position held by Mr. Ivy was given to Mr. Hall, who is twenty-four (24) years younger than Mr. Ivy and is a former trainee of Mr. Ivy.

40.    Defendant also discriminated against and harassed Mr. Ivy on the basis of his age by subjecting him to repeated, offensive inquiries regarding when he would retire and by repeatedly pressuring him into retiring.

41.    Because Mr. Ivy was harassed because of his age by O'Reilly employees and because Mr. Ivy suffered a tangible job detriment (termination by Mr. Beckham), Defendant is strictly liable.

42.     As a direct and proximate result of Defendant's actions and conduct, Mr. Ivy suffered, will suffer, and is suffering damages, including but not limited to, lost wages and benefits, loss of prestige, loss of professional opportunities, and other pecuniary losses. Defendant's actions have all caused Mr. Ivy to suffer deep pain, embarrassment, humiliation, anxiety, and emotional distress.  The unlawful actions of Defendant complained of above were intentional, malicious, and taken with a reckless disregard for the rights of Mr. Ivy, giving rise to claims for liquidated damages under the ADEA.

**COUNT II**
**Age Discrimination in Violation of the THRA**

43.     Paragraphs 1 through 42 are incorporated herein by reference as though they were specifically set forth herein.

44.     Mr. Ivy is age 72 and is a member of a protected class under the THRA. Defendant is an employer for purposes of the THRA pursuant to Tenn. Code Ann. § 4-21-102(5).

45.     Defendant's actions constitute unlawful and intentional discrimination on the basis of age in violation of the THRA.  Defendant O'Reilly is vicariously liable for all actions of its employees.

46.     Defendant subjected Mr. Ivy to an adverse employment action, his termination as an RFSM, because of his age.  While Mr. Ivy was later offered a demotion to a TSM position, this offer amounted to a constructive discharge of Mr. Ivy, as the conditions of the TSM job were deliberately created by O'Reilly to force Mr. Ivy into intolerable working conditions with the intention of causing Mr. Ivy to quit. To the extent that Defendant maintains that Mr. Ivy voluntarily quit his job, which he did not, Mr. Ivy contends that he was constructively discharged.

47.     Mr. Ivy was qualified for the position of RFSM.  Throughout his employment, Mr. Ivy received favorable performance evaluations, and he regularly received performance-based bonuses, and received recognition for his excellent performance throughout his employment with O'Reilly.  Mr. Ivy's 2015 Mid-Year performance review demonstrates that Mr. Ivy was performing satisfactorily in all aspects of his job, and he received a 15% performance bonus for his work in 2015.  Mr. Ivy was qualified to work as an RFSM, and had satisfactorily performed his job as an RFSM for approximately ten (10) years at the time he was terminated because of his age.

48.     The RFSM position held by Mr. Ivy was given to Mr. Hall, who is twenty-four (24) years younger than Mr. Ivy and is a former trainee of Mr. Ivy.

49.     Defendant also discriminated against and harassed Mr. Ivy on the basis of his age by subjecting him to repeated, offensive inquiries regarding when he would retire and by repeatedly pressuring him into retiring.

50.     Because Mr. Ivy was harassed because of his age by O'Reilly employees and because Mr. Ivy suffered a tangible job detriment (termination by Mr. Beckham), Defendant is strictly liable.

51.     As a direct and proximate result of Defendant's actions and conduct, Mr. Ivy suffered, will suffer, and is suffering damages, including but not limited to, lost wages and benefits, loss of prestige, loss of professional opportunities, and other pecuniary losses. Defendant's actions have all caused Mr. Ivy to suffer deep pain, embarrassment, humiliation, anxiety, and emotional distress.  The unlawful actions of Defendant complained of above were intentional, malicious, and taken with a reckless disregard for the rights of Mr. Ivy.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Mr. Ivy respectfully prays that the Court cause service to issue in this cause upon Defendant O'Reilly and that this matter be set for trial. Upon trial by jury, Mr. Ivy prays that the following relief in excess of $1,000,000.00 be granted:

1. That judgment be entered in favor of Mr. Ivy in an amount to be determined at trial for backpay, loss of benefits and other pecuniary losses proximately caused by Defendant's unlawful acts;

2. That judgment be entered awarding Mr. Ivy reinstatement or front pay in lieu thereof against Defendant in an amount to be determined at trial;

3. That judgment be entered awarding Mr. Ivy compensatory damages against Defendant in an amount to be determined at trial;

4. That judgment be entered awarding Mr. Ivy liquidated damages against Defendant in an amount to be determined at trial due to the willful, intentional, malicious, and/or reckless discriminatory conduct of Defendant;

5. That judgment be entered awarding Mr. Ivy all costs, disbursements, expert witness fees, and reasonable attorneys' fees;

6. That judgment be entered permanently enjoining Defendant from engaging in further acts of age discrimination in violation of the ADEA and/or the THRA;

7. That judgment be entered awarding Mr. Ivy such further relief as is deemed just and proper; and,

8. That this matter be set for trial by jury.

Respectfully submitted:

/s/JAMES M. SIMPSON
JAMES M. SIMPSON, BPR 015023
SHAWN R. LILLIE, BPR 014939
JOHN R. HENSLEY, II, BPR 030178
ALLEN, SUMMERS, SIMPSON, LILLIE &
GRESHAM, PLLC
80 Monroe Avenue, Suite 650
Memphis, Tennessee 38120
Telephone:  (901) 763-4200
Facsimile:    (901) 684-1768

ATTORNEYS FOR PLAINTIFF

16